FILED
2013 Jun-20  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **TUSCUMBIA CITY SCHOOL SYSTEM, on behalf of itself and all others similarly situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-332-NW** |
| | ) | |
| **PHARMACIA CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This putative class action is before the court on a motion by defendant, Pharmacia Corporation,[1] to dismiss or strike portions of plaintiff's third amended complaint for failure to state a claim upon which relief can be granted.[2]  In the alternative, defendant asks the court to require plaintiff, the Tuscumbia City School System, to provide a more definite statement of Count III of the Third Amended Complaint.[3]

The court is sadly familiar with the difficulties arising out of plaintiff's attempt

---

[1] According to plaintiff, Pharmacia Corporation is the successor-in-interest to the Monsanto Company, *see* doc. no. 36 (Third Amended Complaint) ¶ 3, which was the company that made the allegedly defective product at issue in this case.  Plaintiff often refers to defendant as Monsanto, *see*, *e.g.*, *id.* ¶ 3, but the court will use defendant's actual name or simply "defendant."

[2] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint).

[3] *Id.* at 1.

to properly plead Count III, which asserts a "products liability" claim.[4]  The *raison d'être* for the third amended complaint was the order entered by this court on November 27, 2012, granting defendant's request for a more definite statement of *only* that Count in the *second* amended complaint.[5]  Thus, plaintiff was ordered "to file [a third] amended complaint that more definitely states *Count III*" in order to "disambiguat[e] the theory" upon which that Count was based, and, in order to "resolve the inconsistency between, on one hand, the pleading of a claim under Alabama's Extended Manufacturer's Liability Doctrine and, on the other hand, the characterization of that claim as one for 'strict liability in tort.'"[6]

Defendant now asks the court to dismiss Count III of the third amended complaint, as well as strike plaintiff's third, newest class definition that applies to all Counts.  Defendant presents several arguments in support of its motion: *i.e.*, plaintiff did not fully comply with the court's order to replead Count III, because it "continues to try to blend AEMLD and strict liability into a single claim, now on behalf of a multistate 'subclass'";[7] plaintiff lacks "standing to assert a products liability claim

---

[4] *See* doc. no. 36 (Third Amended Complaint), at 12-15.

[5] *See generally* doc. no. 32 (Motion to Dismiss or For a More Definite Statement of Count III); doc. no. 35 (Memorandum Opinion and Order) (granting the alternative request for a more definite statement).

[6] Doc. no. 35 (Memorandum Opinion and Order For a More Definite Statement of Count III), at 6-7 (alterations and emphasis supplied).

[7] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint), at 8.

under any [non-Alabama] state law," and cannot "represent any putative class members who might have strict liability claims under the laws of [other] states";[8] defendants are left to guess at "which states' product liability doctrines Plaintiff contends are implicated by Count III";[9] and the "wholesale last-minute change to the class definition for all counts" is procedurally improper under Rule 15, prejudicial, and, in any event, impermissibly overbroad.[10]

As a partial response to defendant's argument that plaintiff attempted "to use an order to provide a more definite statement of Count III as a vehicle to amend the class definition for Counts I and II,"[11] plaintiff filed a motion to allow its third amended complaint "in the event the Court concludes that plaintiff should have sought leave of court before changing the class definition."[12]  That motion is also before the court.

Following consideration of the pleadings, motion, briefs, and independent research, defendant's motion to dismiss Count III will be granted, the remainder of the third amended complaint will be stricken, and plaintiff's motion to accept that complaint as filed will be denied.  In order to place the parties' motions and arguments

---

[8] *Id.* at 9.

[9] *Id.* at 12.

[10] *Id.* at 2; *see also id.* at 13-18.

[11] *Id.* at 13.

[12] Doc. no. 40 (Motion To Allow the Third Amended Complaint), at 1.

in context, a review of the procedural history of this case is necessary.

## I. PROCEDURAL BACKGROUND

**A.    The Initial Complaint, the First Amended Complaint, and Defendant's Corresponding Motions to Dismiss**

Plaintiff commenced this putative class action on January 31, 2012, alleging one count of negligence and one count of wantonness or recklessness against defendant for the design, manufacture, and marketing of electric ballasts for fluorescent light fixtures containing "the toxic chemical known as Polychlorinated Biphenyls ('PCBs')."[13]  Defendant allegedly knew: that PCBs were toxic; that failing ballasts release PCBs into classrooms like those maintained by the plaintiff; and that "PCBs could cause systemic toxic injuries" to humans.[14]  The initial complaint defined the class that plaintiff proposed to represent as every "school system in the United States covered by the [Environment Protection Agency's] December 29, 2010, recommendation to remove ballasts from every fluorescent light in schools built before 1979 because of the presence of the toxic chemical PCBs."[15]

Defendant moved to dismiss the complaint.[16]  After plaintiff's attorneys were granted an extension of time for the *ostensible* purpose of responding to the "many

---

[13] Doc. no. 1 (Complaint), at 1.

[14] *Id.* at 1-2.

[15] *Id.* ¶ 34 (alteration supplied).

[16] Doc. no. 6 (Motion to Dismiss the First Amended Complaint).

4

complex issues" in defendant's motion,[17] plaintiff instead filed its *first amended complaint*.[18]  That complaint again asserted claims for negligence and wantonness, but it contained a different, broader class definition:  "Every school in the United States owning buildings whose fluorescent light ballasts contain the toxic chemicals PCBs."[19]

Defendant then moved to dismiss the first amended complaint.[20]  Defendant asserted that Alabama law does not support negligence and wantonness claims in cases involving products liability where there is no privity between the parties and the ultimate consumer, and when the plaintiff is not within the "foreseeable area of risk."[21]  In response, plaintiff contended that "Alabama law for almost a century has . . . not requir[ed] privity as a prerequisite to liability for manufacturing and selling a hazardous product."[22]  Defendant replied that plaintiff was playing a "game of 'mix and match,'" and "trying to fit a square peg in a round hole," by relying upon cases in which the plaintiffs had sought damages for personal injuries under either the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") or tort theories,

---

[17] Doc. no. 10 (Unopposed Motion for Extension of Time) ¶ 5; *see* Margin Order of Apr. 4, 2012 (granting the motion).

[18] Doc. no. 12 (First Amended Complaint).

[19] *Id.* ¶ 36.

[20] Doc. no. 15 (Motion to Dismiss the First Amended Complaint).

[21] Doc. no. 16 (Brief in Support of Motion to Dismiss), at 2, 6-8.

[22] Doc. no. 17 (Response in Opposition to Motion to Dismiss), at 12.

5

instead of analyzing cases in which the plaintiff sought damages for property losses, also referred to as "economic losses."[23]

On June 27, 2012, this court found that defendant's first motion to dismiss had been mooted as a result of plaintiff's first amended complaint, and denied its motion to dismiss the first amended complaint.  The court began by referencing and incorporating *in haec verba* an opinion entered by the undersigned judicial officer when serving as a Circuit Judge for the State of Alabama in a case styled *Huntsville City Board of Education v. National Gypsum Company*, *et al.*, No. CV-83-325L (Mad. Co. Ala. Cir. Ct., Aug. 27, 1984).[24]  That opinion discussed the distinctions between the AEMLD and common law torts.[25]  This court's June 27th opinion ruled, consistent with the discussion in the *Huntsville City Board* decision, that Alabama courts had "*not* adopt[ed] the strict liability regime [under Section 402A of the *Restatement (Second) of Torts*] that prevailed in some sister states," and "clearly stated that AEMLD is a stand-alone tort, *separate from* the common-law action for negligence."[26] Although plaintiffs "often assert both AEMLD claims and traditional common-law tort claims" in the same case, plaintiff's first amended complaint alleged only claims

---

[23] Doc. no. 19 (Reply in Support of Motion to Dismiss), at 2-4, 6.

[24] Doc. no. 23 (Memorandum Opinion and Order Denying Motion to Dismiss the First Amended Complaint), at 8-10.

[25] *See* doc. no. 23-1.

[26] *Id.* at 13 (emphasis in original, alteration supplied).

for negligence and wantonness (or recklessness).[27]  Thus, "despite plaintiff's reliance on AEMLD cases in its brief," the court reviewed the *relevant* caselaw, distinguished the cases cited by defendants, and concluded that privity and foreseeability were not required for plaintiff to recover against defendant under claims based upon those common-law tort theories.[28]

## B.    The Second Amended Complaint and the Third Motion to Dismiss

Plaintiff sought leave to file a second amended complaint on October 2, 2012, to "add a products liability claim against defendant."[29]  Defendant did not respond to the motion.  For that reason, this court concluded that defendant did not oppose the motion and granted it on October 19th.[30]

Plaintiff's *second amended* complaint retained the class definition utilized in the first amended complaint, as well as the two counts for negligence and wantonness, respectively, but added a third count for "products liability" based upon defendant's alleged "strict liability in tort."[31]

Defendant moved to dismiss or, in the alternative, for a more definite statement

---

[27] *Id.* at 13.

[28] *Id.* at 13-14; *see id.* at 14-24.

[29] Doc. no. 28 (Motion for Leave to Amend Complaint), at 1.

[30] Doc. no. 30 (Order), at 1.

[31] Doc. no. 31 (Second Amended Complaint) ¶¶ 36 (class definition), 53-58, 59 (The "plaintiff and the class seek a trial on defendant's strict liability in tort.").

of Count III of the second amended complaint.[32]  It argued that a claim for "products

liability" based on a theory of "strict liability in tort" is not available under Alabama

law and, in any event, it was ambiguous whether plaintiff was asserting a claim under

the AEMLD, or some other legal theory.[33]  In response, plaintiff noted that Count III

"precisely tracks" the elements of the AEMLD.[34]  Defendant then replied that the

complaint should be amended to clearly reflect the true nature of Count III, and to

eliminate the inconsistency of alleging both an AEMLD claim and one for "strict

liability in tort" within the same count.[35]

On November 27, 2012, the court — citing the opinion in the *Huntsville City

Board of Education* case, *supra* — agreed with defendant that "the AEMLD does not

utilize traditional strict liability."[36]  The court found the issue presented by plaintiff's

*second amended* complaint to be "frustrating" and "totally unnecessary" given this

court's prior decisions, and concluded that plaintiff's counsel had "not even bother[ed]

to read" this court's previous opinion or the *Huntsville City Board* opinion attached

---

[32] Doc. no. 32 (Motion to Dismiss or For a More Definite Statement of Count III of the Second Amended Complaint).

[33] *Id.* ¶¶ 3-6.

[34] Doc. no. 33 (Plaintiff's Response Brief in Opposition to Motion to Dismiss), at 1.

[35] Doc. no. 34 (Defendant's Reply Brief in Support of Motion to Dismiss), at 2-4.

[36] Doc. no. 35 (Memorandum Opinion and Order For a More Definite Statement of Count III), at 4 (citing *Huntsville City Board of Education v. National Gypsum Co.,* No. CV-83-325L, slip op. at 42-45 (Madison Co. Ala. Cir. Ct., Aug. 27, 1984)).  The *Huntsville City Board* opinion is now document 23-1 in this case.

to it.[37]  Plaintiff had, however, alleged sufficient facts to support an AEMLD claim in

Count III.[38]  Nevertheless, the court concluded that plaintiff should provide a more

definite statement *of Count III*.

> That conclusion is especially warranted when, as here, the case is a
> putative class action.  As defendant observes, disambiguating the theory
> behind Count III "will make clearer discovery, clearer responsive
> pleadings, and clearer framing of the issues if Plaintiff seeks class
> certification."[39]  Clarity of the record will also be furthered, because the
> basis of Count III will be *in plaintiff's complaint*, rather than in
> representations within a brief submitted in response to a motion to
> dismiss.
>
> Second, and related to the clarity rationale, a more definite
> statement is proper in order to resolve the inconsistency between, on one
> hand, the pleading of a claim under Alabama's Extended Manufacturer's
> Liability Doctrine and, on the other hand, the characterization of that
> claim as one for "strict liability in tort."[40]

## C.  The Third Amended Complaint and the Fourth Motion to Dismiss

Plaintiff filed its *third amended* complaint on December 4, 2012.[41]  Despite the

fact that the court's November 27th order requiring plaintiff to file a more definite

statement addressed only Count III,[42] the third amended complaint yet again changed

---

[37] *Id.* at 4-5.

[38] *Id.* at 5.

[39] The internally quoted passage came from defendant's reply brief.  *See* doc. no. 34
(Defendant's Reply Brief in Support of Motion to Dismiss), at 3-4.

[40] Doc. no. 35 (Memorandum Opinion and Order For a More Definite Statement of Count
III), at 6-7 (emphasis in original, internal citations omitted).

[41] Doc. no. 36.

[42] Doc. no. 35 (Memorandum Opinion and Order For a More Definite Statement of Count

the class definition *for all Counts* to "[e]very school system in the United States owning buildings constructed before 1979."[43]   The third amended complaint also alleged a theretofore unmentioned "sub-class of plaintiffs" for Count III defined as follows:

> Every school system in any state in the United States whose law recognizes a claim for product liability for hazardous products, *the prima facie elements of which are the same as those stated in Section 402A(1) of the Restatement of Torts (Second)*, owning buildings constructed before 1979 (the "Products Liability Sub-Class").[44]

According to plaintiff, it is a typical member of the sub-class that adequately represents the sub-class's interests "because its claims for products liability arise under and are governed by the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"), the *prima facie* elements of which are the same as those set forth in Section 402A(1) of the Restatement."[45]

Defendant filed its fourth motion to dismiss on December 17, 2012.[46]  Plaintiff, simultaneously with filing its response to defendant's motion on January 9, 2013, filed its "motion in the alternative to allow the third amended complaint as filed."[47]

---

III), at 7.

[43] Doc. no. 36 (Third Amended Complaint) ¶ 36.

[44] *Id.* ¶ 54 (emphasis supplied).

[45] *Id.*

[46] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint).

[47] Doc. no. 40 (Motion to Allow the Third Amended Complaint).

## II.  LEGAL STANDARDS

The standards for reviewing motions to dismiss based upon Federal Rule of Civil Procedure 12(b)(6) were fully reviewed in the memorandum opinion entered in this action on June 27, 2012, and will not be reiterated here.  *See* doc. no. 23, at 2-4. Similarly, the standards for reviewing motions for a more definite statement under Federal Rule of Civil Procedure 12(e) were fully reviewed in the memorandum opinion entered in this action on November 27, 2012, and will not be reiterated here. *See* doc. no. 35, at 3.

Federal Rule of Civil Procedure 15(a) addresses amendments to pleadings before trial, and reads as follows:

(1) *Amending as a Matter of Course*.  A party may amend its pleading *once* as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b)*, (e), or (f), whichever is earlier.

(2) *Other Amendments*.  In all other cases, a party may amend its pleading *only* with the opposing party's written consent or *the court's leave*.  The court should freely give leave when justice so requires.

(3) *Time to Respond*.  Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after

11

service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a) (emphasis supplied).  Thus, after a party has amended its pleading once as a matter of course, that party bears the burden of obtaining permission from the opposing party or the court to file further amendments.  Although leave of court should be freely given, it may be denied in situations involving, for example, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility."  *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (alteration supplied).

## III.  ANALYSIS

### A.    The Amended Class Definition

The court first considers the propriety of plaintiff's decision to present a new class definition that governs the *entire* amended complaint, despite the fact that the court's November 27th order for a more definite statement pertained only to Count III. The definition of the class that plaintiff purports to represent has changed throughout this litigation.  Initially, the class consisted of every "school system in the United States *covered by the EPA's December 29, 2010, recommendation* to remove ballasts from every fluorescent light *in schools built before 1979* because of the presence of

12

the toxic chemical PCBs."[48] The definition then shifted to every "school in the United States owning buildings *whose fluorescent light ballasts contain the toxic chemicals PCBs*" (the "PCB leakage class") in the first and second amended complaints.[49] Finally, the third amended complaint defines the class as every "school system in the United States owning buildings *constructed before 1979*."[50]

Defendant presents three reasons to disallow the latest definition:   it is overbroad; it prejudices defendant because extensive discovery was done while operating under the "PCB leakage class" definition; and its inclusion violates Rule 15(a).[51]   Plaintiff does not directly address those reasons, but instead asserts that the new class definition "is more appropriate given the relief" it seeks:  *i.e.*, to require defendant to inspect schools and "determine whether and to what extent remediation is required."[52]   That argument obscures the fact that plaintiff has requested virtually the same relief throughout the litigation, and had three prior pleading opportunities over the course of several months to craft a class definition that best fits its requested relief.[53]

---

[48] Doc. no. 1 (Complaint) ¶ 34.

[49] Doc. no. 12 (First Amended Complaint) ¶ 36; doc. no. 31 (Second Amended Complaint) ¶ 36.

[50] Doc. no. 36 (Third Amended Complaint) ¶ 36.

[51] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint), at 13-18.

[52] Doc. no. 39 (Plaintiff's Brief in Opposition to Motion to Dismiss or Strike), at 9.

[53] *See* doc. no. 1 (Complaint), at 17-18 (Prayer for Relief); doc. no. 12 (First Amended

13

Rule 15 provides that if "the pleading is one to which a responsive pleading is required" (*e.g.*, a complaint), a party may amend the pleading once, as a matter of course, within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Plaintiff filed its initial complaint on January 31, 2012.[54] Defendant filed a motion to dismiss on March 26, 2012.[55] Plaintiff's ability to amend "once as a matter of course" normally would have expired under Rule 15(a)(1)(B) twenty-one days later, on April 16, 2012, but this court allowed plaintiff an additional fourteen days to respond to defendant's motion to dismiss the original complaint.[56] Hence, the first amended complaint filed on April 20, 2012 was timely under Rule 15.[57] Any subsequent amendment required "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

The court's opinion of November 27, 2012, ordered plaintiff to file a third amended complaint that more definitely stated the claim asserted in *Count III*. But the court did not grant plaintiff leave to amend other portions of the complaint, and

Complaint), at 17-18 (Prayer for Relief); doc. no. 31 (Second Amended Complaint), at 14-15 (Prayer for Relief).

[54] Doc. no. 1.

[55] Doc. no. 6.

[56] *See* doc. no 10 (Unopposed Motion for Extension of Time); Margin Order of Apr. 4, 2012.

[57] Doc. no. 12.

14

plaintiff did not request leave to do so.  Indeed, the court's ruling was in accord with the underlying motion to dismiss, which challenged the sufficiency of Count III *only*.[58] Plaintiff's brief in opposition to defendant's *present* motion to dismiss offers no explanation for why it disregarded Rule 15 by exceeding the scope of the court's November 27th order.  Moreover, plaintiff's *ex post* "motion in the alternative to accept the third amended complaint as filed" contains only a single sentence that essentially restates the title of that motion and provides no reason why justice requires allowing the new class definition.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely grant leave when justice so requires.").

Simply put, an order granting an adverse party's motion for a more definite statement of a specific count does not give the pleading party *carte blanche* to amend other portions of its complaint without first seeking and receiving leave.  The court will not ratify such action, especially when the offending party does not explain its initial failure to comply with Rule 15(a)(2), fails to subsequently provide a legitimate reason for granting relief under that Rule, and had prior opportunities to amend its complaint.  *See McKinley v. Kaplan*, 177 F.3d at 1258; *see also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (observing that leave to amend may be denied for a "substantial reason").

---

[58] *See* doc. no. 32 (Motion to Dismiss Count III of the Second Amended Complaint).

**B.     Amended Count III and the "Subclass"**

Plaintiff's repleading of Count III should have been a relatively straightforward matter, given this court's prior finding that an action based upon Alabama's Extended Manufacturer's Liability Doctrine is distinct from a claim under § 402A of the *Restatement (Second) of Torts*.[59]  It is clear from the court's November 27, 2012 opinion on defendant's motion to dismiss Count III of the second amended complaint that plaintiff:  (1) had properly stated an AEMLD claim; but (2) could not present both an AEMLD claim and one based on a theory of strict liability in tort in same Count.[60]  In order to "*disambiguat*[*e*] the theory behind Count III" and to "*resolve* the *inconsistency* between" pleading AEMLD and strict liability claims in the same Count, the court ordered a more definite statement.[61]  To remedy those deficiencies, plaintiff could have, for example, simply eliminated the references to "strict liability" in Count III.

Instead, as defendant observes, plaintiff "continues to try to blend AEMLD and strict liability into a single claim, now on behalf of a multistate 'subclass' rather than

---

[59] Doc. no. 35 (Memorandum Opinion and Order for a More Definite Statement of Count III), at 4 (citing *Huntsville City Board of Education v. National Gypsum Co.*, No. CV-83-325L, slip op. at 42-45 (appended as doc. no. 23-1 to the court's June 27, 2012 opinion denying defendant's motion to dismiss the first amended complaint), and *Cain v. Sheraton Perimeter Park South Hotel*, 592 So. 2d 218, 220 (Ala. 1991)).

[60] *Id.* at 4-7.

[61] *Id.* at 6-7 (alternation and emphasis supplied).

the entire nationwide class."[62]  Specifically, plaintiff contends that it can represent school systems "in any state in the United States whose law recognizes a claim for product liability for hazardous products" under § 402A because plaintiff's claims *under the AEMLD* share the same *prima facie* elements.[63]  As defendant more succinctly put it, plaintiff wishes "to represent a subclass composed of Alabama AEMLD claimants and non-Alabama strict liability claimants."[64]

The court reiterates that which it has said twice before: a claim under Alabama's Extended Manufacturer's Liability Doctrine is *not* the same as a strict liability claim under § 402A of the *Restatement (Second) of Torts*.  *See Huntsville City Board of Education v. National Gypsum Co.*, No. CV-83-325L, slip op. at 41-45 (Madison Co. Ala. Cir. Ct., Aug. 27, 1984) (discussing the "hybrid" nature of the AEMLD as articulated by *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976), and *Casrell v. Altec Industries, Inc.*, 335 So. 3d 128 (Ala. 1976)); doc. no. 35, at 4 (finding that "defendant is technically correct that the AEMLD does not utilize traditional strict liability"); *see also id.* at 6-7 (ruling that it is inconsistent and ambiguous to allege a strict liability claim in the same Count as an AEMLD claim).

Moreover, the Alabama Supreme Court has ruled that the AEMLD and § 402A

---

[62] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint), at 8.

[63] Doc. no. 36 (Third Amended Complaint) ¶ 54.

[64] Doc. no. 37 (Motion to Dismiss or Strike the Third Amended Complaint), at 11.

are not the same.  *See*, *e.g.*, *Cain v. Sheraton Perimeter Park South Hotel*, 592 So. 2d 218, 220 (Ala. 1991) ("The AEMLD is *not based on a theory of strict liability in tort*, but it retains a fault concept.") (citing *Atkins*, 335 So. 2d at 129) (emphasis supplied); *Dennis v. American Honda Motor Co., Inc.*, 585 So. 2d 1336, 1338 (Ala. 1991) (holding that, even though an AEMLD claim "is *similar to* a strict liability tort action under § 402A . . . this Court *rejected the no-fault concept of § 402A when it established the AEMLD*") (emphasis supplied).

Even jurists who have *disagreed* with the Alabama Supreme Court's explication of this State's "Extended Manufacturer's Liability Doctrine" have acknowledged that, as a descriptive matter, the AEMLD and § 402A differed from the outset.  For example, Justice Kenneth Ingram observed in his dissenting opinion in *Campbell v. Cutler Hammer, Inc.*, 646 So. 2d 573 (Ala. 1994), that:

> This Court, in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (1976), and *Atkins v. American Motors Corp.*, 335 So.2d 134, 138-39 (Ala. 1976), adopted our present version of the AEMLD in order to protect consumers against injuries caused by defective products.  Although the language of the AEMLD is similar to that of *Restatement (Second) of Torts* § 402A (1965), this Court *has specifically declined to adopt in total the strict liability concept of § 402A, preferring instead to retain the fault-based concepts* associated with traditional negligence actions.

*Id.* at 576 (Ingram, J., dissenting) (emphasis supplied).  On the same day the Alabama Supreme Court decided *Cutler Hammer*, it also handed down its opinion in *General*

*Motors Corp. v. Saint*, 646 So. 2d 564 (Ala. 1994), which reversed a trial court's

refusal to give a jury instruction on contributory negligence in an AEMLD case. Once

again, Justice Ingram dissented to explain his view that "the defense of contributory

negligence has no place in products liability cases." *Id.* at 569 (Ingram, J., dissenting).

> I believe we need to propel ourselves into the mainstream of American jurisprudence in regard to products liability law. The course we must follow to achieve such a goal is simple. In my opinion, we must either adopt the doctrine of strict liability, as it is stated in § 402A, *Restatement (Second) of Torts* (1965), or we must remove contributory negligence as a defense in products liability cases.

> Since 1965, *most* American jurisdictions have adopted Restatement § 402A. I believe it would be sufficient to state that *the doctrine is one that provides strict liability* as an alternative method to traditional and conventional negligence-based torts and to a contract/warranty theory of recovery. In 1976, this Court *flirted with the adoption of strict liability* in the case of *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala. 1976). However, the *Atkins* Court *slammed the door shut on strict liability* and *instead* adhered to the proposition that "selling a dangerously unsafe product is negligence as a matter of law." 335 So.2d at 141.

*Id.* (emphasis supplied).

Plaintiff's attorneys either do not understand, or refuse to accept the

pronouncements of both the Alabama Supreme Court and this court. They cite in

support of their position that the AEMLD and § 402A are interchangeable portions of

the *Huntsville City Board* opinion that reflect the similarity between the theories:[65]

---

[65] *See* doc. no. 39 (Plaintiff's Brief in Opposition to Motion to Dismiss or Strike), at 2, 4-5.

*e.g.*, "[w]hen viewed from the perspective of <u>outcome</u>, or <u>result</u>, there really is no difference" between the two theories;[66] "distinctions that may be drawn between the two approaches may be viewed as differences in emphasis merely, but <u>not</u> as substantive variances";[67] and the AEMLD is "an indigenous variant of [strict liability] doctrine which so closely resembles § 402A that it could be called a 'clone.'"[68]

While emphasizing the foregoing snippets from the opinion in *Huntsville City Board*, plaintiff's counsel totally ignore *many more* passages that emphasize the distinctions between the two theories:  *e.g.*, "[w]hen viewed from the perspective of <u>substantive</u> law, . . . there is a difference between the <u>Restatement</u> doctrine and the Alabama hybrid."[69]  That opinion also refers repeatedly to the AEMLD as a "hybrid" action.[70]  It notes that the adoption of strict liability in tort as set out in § 402A "did not occur" in Alabama.[71]   And the opinion concludes that the reasons for the AEMLD's creation are "peculiar to the legal soil of this State."[72]

Plaintiff admits that Alabama law allows certain defenses to an AEMLD claim

---

[66] *Huntsville City Board of Education v. National Gypsum Co.*, No. CV-83-325L, slip op. at 43 (Mad. Co. Ala. Cir. Ct., Aug. 27, 1984) (alteration supplied, underlined emphasis in original).

[67] *Id.* at 46 (underlined emphasis in original).

[68] *Id.* at 53 (alteration supplied).

[69] *Id.* at 44 (underlined emphasis in original).

[70] *Id.* at 44-45.

[71] *Id.* at 45 n.34.

[72] *Huntsville City Board of Education v. National Gypsum Co.*, No. CV-83-325L, slip op. at 44 (Mad. Co. Ala. Cir. Ct., Aug. 27, 1984).

that other states do not permit under their strict products liability doctrines, but it assures the court that those defenses ultimately will not succeed.[73]   That argument prejudges the issue.  Plaintiff cannot assume away substantive differences between an AEMLD theory and a theory based on strict liability in tort, because a class action under Federal Rule of Civil Procedure 23 cannot "abridge, enlarge or modify any substantive right."  The Rules Enabling Act, 28 U.S.C. § 2072(b); *see also Wal-Mart Stores, Inc. v. Dukes*, — U.S. — , 131 S. Ct. 2541, 2561 (2011) (refusing to certify a class that would not allow defendant to litigate its defenses to individual claims, because doing so would violate 28 U.S.C. § 2072(b)).

The Rules Enabling Act and due process prevent plaintiff from "stitch[ing] together" or "amalgamat[ing] disparate claims."  *Sacred Hart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (alterations supplied); *see also id.* at 1180 (ruling that there should be "serious

---

[73] Doc. no. 39 (Plaintiff's Brief in Opposition to Motion to Dismiss or Strike), at 8 ("The *only* difference defendant points to [between the AEMLD and § 402A] is the availability of certain fault-based defenses in an AEMLD case, which are not available under some other states' products liability tort. We submit that if plaintiff proves an AEMLD case, and if none of these fault-based defenses defeat plaintiff's case (which on the facts they will not), then plaintiff has proven liability under the law of every state except Delaware and North Carolina.") (emphasis in original, alteration supplied); *see also* doc. no. 42 (Defendant's Reply Brief in Support of Motion to Dismiss or Strike), at 2 ("Tuscumbia's only explanation for why it should be allowed to proceed contrary to the Court's ruling is its self-serving pronouncement that the differences between the AEMLD and strict liability won't matter once all the evidence is in, because Pharmacia will ultimately be unable to prevail on any of the AEMLD's unique fault-based defenses. That *ipse dixit* assumption is legally insufficient to allow the case to proceed on the basis of a blended AEMLD/strict-liability claim.").

analysis of the variations in applicable state law relative to . . . affirmative defenses");

*In the Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301-02 (7th Cir. 1995)

(noting that a class action under the varying standards of care imposed by different

states would result in an impermissible "law that is merely an amalgam, an averaging,

of the nonidentical negligence laws of 51 jurisdictions"); *In re Conagra Peanut Butter*

*Products Liability Litigation*, 251 F.R.D. 689, 697-98 (N.D. Ga. 2008) (concluding

that plaintiffs overlooked or downplayed the nuances and significant variances among

states' law); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 735-36 (S.D. Fla.

2007) (quoting *Rhone-Poulenc*, 51 F.3d at 1300).

In summary, plaintiff once again has failed to properly plead Count III by

conflating an AEMLD claim with a claim for strict liability.

## C.     The Remedy

Ordinarily, the court would grant the request to strike the complaint and simply

order repleader.  This is *not* an "ordinary case," however.  Plaintiff's attorneys have

had four opportunities to properly plead a complaint, but still have not done so.

Further, when ordered on November 27, 2012 to file a more definite statement of

*Count III* of the second amended complaint *only*, plaintiff's counsel:  exceeded the

scope of this court's order; failed to comply with Rule 15; refused to acknowledge this

court's prior rulings that actions based upon Alabama's "Extended Manufacturer's

22

Liability Doctrine" and § 402A of the *Restatement (Second) of Torts* are *not* the same; and, obstinately continued to bundle those theories into a single count.  It is a close question as to whether those actions of counsel were contumacious, or in bad faith, or both.  Regardless, plaintiff's counsel will not be rewarded with yet another opportunity to amend. *See*, *e.g.*, *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (providing a non-exhaustive list of reasons for denying leave to amend, including the repeated failure to cure deficiencies by amendments previously allowed, bad faith, undue delay, and futility).

On the other hand, dismissing the complaint in its entirety would be too harsh a sanction, given that plaintiff has pled viable negligence and wantonness claims. Defendant proposes, among other solutions, that the court deem the first amended complaint to be the operative pleading.[74]  That course, which effectively dismisses Count III, is appropriate.  The actions of plaintiff's counsel have demonstrated a general disregard for the orders of this court and the Federal Rules of Civil Procedure. As for Count III specifically, the court stated on two prior occasions that an AEMLD claim is distinct from a claim under § 402A, and plaintiff had two prior opportunities to properly plead that Count.  Yet in an apparent attempt to circumvent the court's earlier rulings, the third amended complaint *still* commingled AEMLD and § 402A.

---

[74] Doc. no. 42 (Defendant's Reply in Support of Motion to Dismiss or Strike), at 5.

Those facts warrant dismissal, because they reveal a clear record of willful misconduct on the part of plaintiff's counsel, and demonstrate that a lesser sanction, such as repleader of Count III, would not suffice.  *See* Fed. R. Civ. P. 41(b) (providing for the dismissal of a case or claims for failure to comply with the Federal Rules of Civil Procedure or orders of the court); *see also Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (articulating the two-prong standard — *i.e.*, willful misconduct and the ineffectiveness of a lesser sanction — for dismissals under Rule 41(b)).

Furthermore, this case has languished in the pleading phase for too long, and the court has the ability to ensure compliance with its orders by dismissing claims. As the Eleventh Circuit has stated, in "addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation."  *Zocaras*, 465 F.3d at 483.

Thus, the second and third amended complaints will be stricken for abusive pleading practices, refusal to abide by the rulings and orders of the court, and counsel's failure to comply with the Federal Rules of Civil Procedure.  By default, the first amended complaint becomes the operative pleading.  That course preserves the claims that plaintiff's counsel previously and properly pled — *i.e.*, its negligence and wantonness claims — while also eliminating plaintiff's improper amendment of the

24

class definition, as well as remedying its refusal to plead Count III in accordance with the court's rulings and November 27th order.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, defendant's motion to dismiss Count III of the third amended complaint is GRANTED,[75] and the remainder of that complaint is STRICKEN.   Plaintiff's motion to allow the third amended complaint as filed is DENIED.[76]   Finally, it is ORDERED that the second amended complaint also is STRICKEN,[77] which leaves the first amended complaint (doc. no. 12) as the operative pleading.

**DONE** and **ORDERED** this 20th day of June, 2013.

_____
United States District Judge

---

[75] Doc. no. 37.

[76] Doc. no. 40.

[77] Doc. no. 31.