FILED
2015 Sep-01  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **TUSCUMBIA CITY SCHOOL SYSTEM, on behalf of itself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. CV-12-S-332-NW** |
| **PHARMACIA CORPORATION,** | ) ) ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDERS

This action is before the court on defendant's motion for summary judgment,[1] plaintiff's motion for class certification,[2] and defendant's motion to strike plaintiff's motion for class certification and to strike the class allegations of plaintiff's first amended complaint[3].  Upon consideration of the pleadings, briefs, evidentiary submissions, and oral arguments of counsel, this court concludes that the motion for summary judgment should be granted, and the other motions denied as moot.

## I.  INTRODUCTION

Polychlorinated Biphenyls ("PCBs") belong to a broad family of man-made

---

[1] Doc. no. 72.

[2] Doc. no. 74.

[3] Doc. no. 77.

chemicals known as "chlorinated hydrocarbons." They were domestically produced in the United States from 1929 until their manufacture was banned by the "Toxic Substances Control Act,"[4] which had a 1979 effective date. *See* Pub. L. 94-469 §§ 6(d), (e), 90 Stat. 2003 (1976) (now codified, as amended, at 15 U.S.C. § 2605 (2008)). Prior to that Act, PCBs had been used in hundreds of industrial and commercial applications, including as insulators in the electrical capacitors installed in the "ballasts" of fluorescent light fixtures.[5] A "ballast" is the device that regulates the flow of electricity into the fluorescent tube.[6]

The United States Environmental Protection Agency recommended, on December 29, 2010, that every school system in the United States remove from its school buildings any ballasts containing PCBs from fluorescent light fixtures manufactured before 1979.[7]

Plaintiff, the Tuscumbia City School System, a public school district in Colbert County, Alabama, owns and operates schools that contain fluorescent light fixtures

---

[4] *See* doc. no. 1 (Original Complaint), Ex. B, at ECF 32. ("ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing"). Bluebook Rule 7.1.4 allows citation to page numbers generated by the ECF header. *The Bluebook: A Uniform System of Citation*, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010).

[5] *See* doc. no. 1 (Original Complaint), Ex. A, at ECF 21.

[6] *See* http://www.lrc.rpi.edu/programs/nlpip/lightinganswers/adaptableballasts/ballast.asp (last visited Sept. 1, 2015).

[7] Doc. no. 1 (Original Complaint), Ex. A, at ECF 21.

2

manufactured before 1979, and alleges that

> Monsanto, now known as [the defendant,] Pharmacia, manufacured the PCBs in all those ballasts.  Monsanto intentionally marketed PCBs for use in fluorescent light fixtures while knowing that PCBs were toxic, that failing ballasts would release PCBs into classrooms, and that PCBs could cause systemic toxic injuries.  Because Monsanto was negligent, reckless and wanton, it should bear the burden of replacing the ballasts.

Doc. no. 1 (Original Complaint), at 1-2.

## II.  PROCEDURAL HISTORY

Plaintiff commenced this suit on behalf of itself, as well as representative of a putative class composed of "[e]very school system in the United States covered by the EPA's December 29, 2010, recommendation to remove ballasts from every fluorescent light in schools built before 1979 because of the presence of toxic chemical PCBs."  *Id.* ¶ 34 (alteration supplied).   The original complaint alleged one count of negligence and one count of wantonness as the bases for defendant's liability.[8]  According to plaintiff:

> Although some children, teachers, and staff were undoubtedly injured at various times prior to December 29, 2010 by the PCBs in fluorescent light ballasts, *the plaintiff school board and the class only suffered injury when the EPA* directed them *on Dec 29, 2010 to remove all fluorescent light ballasts from schools built before 1979.*

*Id.* ¶ 29 (emphasis supplied).

_____

[8] *See id.* ¶¶ 36-42 (Negligence), and ¶¶ 43-50 (Wantonness and Recklessness).

3

Defendant responded to the original complaint with a motion to dismiss[9] and, among other things, argued in its supporting brief that

> Tuscumbia brings this tort action even though Pharmacia did not manufacture the ballasts or the PCB-containing components inside them [*i.e.*, the electric capacitors,] and even though Pharmacia did not sell the ballasts or components to Tuscumbia.  There is no precedent for such a claim under Alabama law, and there is abundant precedent against it.

Doc. no. 7 (Brief in Support of Motion to Dismiss), at 2 (alteration supplied).

Defendant also asserted that plaintiff had failed to allege "any identified present injury."  That contention was based, in part, upon the following arguments:

> Until the manufacture of PCBs was banned by the U.S. Government in 1979, "PCBs were commonly used as insulators in electrical equipment because they have a high tolerance for heat, do not easily burn, and are non-explosive." 2010 EPA Recommendation at 21. A typical electrical capacitor in a fluorescent light ballast contains only 1 to 1.5 ounces of PCBs. *Id*. at 25.

> Even after the manufacture of PCBs was banned, "uses of older PCB-containing ballasts were allowed to continue, provided that the ballasts had not failed and the PCBs were not leaking." 2010 EPA Recommendation at 21. Indeed, federal law still permits use of PCBs in "totally enclosed" uses, 40 CFR § 761.20(a)-(a)(1), and EPA regulations specify that PCBs in fluorescent lighting ballasts are such an allowed "totally enclosed use." 40 CFR §§ 761.20, 761.30. *See also* 15 U.S.C. § 2605(e)(2) (portion of the Toxic Substances Control Act permitting "totally enclosed" uses of PCBs to continue). The EPA expressly stated in 2010 that "intact PCB-containing light ballasts pose no immediate health threat." 2010 EPA Recommendation at 23. **PCBs in ballasts only create a risk of exposure if the ballasts leak or catch fire**. *Id.*;

---

[9] *See* doc. no. 6 (Motion to Dismiss), at 2.

4

40 CFR §§ 761.20, 761.30.

**Tuscumbia does not allege that any of its ballasts have leaked or that any of them have caught fire**.

. . . .

"Alabama has long required a manifest, present injury before a plaintiff may recover in tort." *Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 716 (Ala. 2002); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (a plaintiff's "concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law"). . . .

. . . .

**Tuscumbia never says what past or present injury it has suffered, alleging instead that some unspecified injury occurred when the EPA issued its 2010 recommendation**. *See* Compl. at ¶ 19. The Court is left to guess as to what possible injury to Tuscumbia was triggered by the release of the EPA's 2010 recommendation.  Under Alabama law, where a plaintiff fails to allege a sufficient injury, its tort claims fail on the merits. *Southern Bakeries, Inc*., 852 So. 2d at 716.

In fact, while it certainly conveys information, the EPA's 2010 publication in and of itself does not create any present harm.  As the attachments to the Complaint make clear, **the EPA has not mandated replacement of properly functioning ballasts that contain PCBs**. Instead, like the 2001 EPA publication that preceded it, the 2010 EPA publication merely "*recommends*" that these ballasts be replaced, preferably as part of an overall upgrade to more modern lighting, so as to eliminate any and all risk of possible PCB leakage in the event of future failure, and to achieve the energy efficiency that more modern lighting equipment offers.  2010 EPA Recommendation at 26; *see also* 2001 EPA Recommendation at 2.  In other words, neither the 2001 EPA recommendation nor the 2010 EPA recommendation *requires* a school to do anything with properly functioning ballasts that contain PCBs.

The fact that the 2001 and 2010 EPA recommendations do not mandate replacement of properly functioning ballasts is underscored by the EPA's own regulations, which still expressly provide that it is legal to use properly functioning PCB-containing ballasts.  *See* 40 C.F.R. §§ 761.20, 761.30.  A mere recommendation by the EPA to replace a product, particularly one that is already well beyond its useful life but still legal to use, does not itself result in damage or injury to anyone.

So what past or present injury is Tuscumbia complaining of?  The answer is none.  **Tuscumbia does not identify a single one of its ballasts that has leaked**.  It does not identify a single instance in which it has even voluntarily replaced a single ballast for any reason.  It does not identify any expense already incurred or any damage that has already occurred as a result of the EPA recommendations.  There is no contention that the ballasts or the PCBs inside them are in any different condition today than when they were sold.  Instead, the complaint appears to seek relief based upon the mere presence of PCBs in properly functioning ballasts, the fear that those 30+-year-old ballasts may eventually fail, and the EPA's statement that some (but not all) failures of PCB-containing ballasts may result in PCB leakage.  *See* 2010 EPA Recommendation at 27-28.

**A mere risk of future failure and injury is not actionable under Alabama law**.  "Alabama courts have never allowed a recovery based on a product that is and has been working properly."  *Farsian*, 682 So. 2d at 407 (barring recipient of a manufactured heart valve from recovering damages based on speculation that the valve might fail because he had no "legal injury sufficient to support his claim").  Indeed, Tuscumbia's claims here virtually echo those of the lead plaintiff in *Ford Motor Co. v. Rice*, 726 So. 2d 626 (Ala. 1998).  There, plaintiffs asserted that their SUVs suffered from a defect that resulted in an increased risk of rollover; but their SUVs had not in fact rolled over.  The Alabama Supreme Court ruled that "an alleged product defect that has not manifested itself in such a way as to cause any observable adverse physical or economic consequences" does not constitute a present injury needed to support a tort claim.  *Id*. at 631 (footnote omitted).

6

Here, **Tuscumbia asserts that ballasts containing PCBs present a leakage risk in the event of failure, but does not allege that any of its own ballasts have actually failed and leaked**.  Under the controlling precedents of *Farsian* and *Ford Motor Co. v* [*sic*] *Rice*, no tort claim exists under Alabama law for the mere potential of a product to fail or cause harm at some time in the future.

Doc. no. 7 (Brief in Support of Defendant's Motion to Dismiss), at 6-7, 10-13 (boldface emphasis supplied).  In other words, defendant argued that plaintiff had alleged only *the presence of* PCBs within some of the fluorescent light ballasts in school buildings constructed before 1979, but plaintiff had not alleged that the PCBs *had actually leaked into the environment of its school buildings*.  If there had been no leakage, then arguably there was no basis for a cognizable claim for either personal injuries on behalf of school teachers or pupils, or property damages.

Plaintiff was ordered to respond to defendant's motion to dismiss on or before April 10, 2012, but its attorneys requested an additional fourteen days to file a brief responding to the "many complex issues" raised in defendant's motion.[10]  The motion was granted, but plaintiff's attorneys did not file a responsive brief.  Instead, they filed a "First Amended Class Action Complaint" alleging "manifest, present injuries in the form of [the] *release of PCBs into the environment of its schools*."[11]  The class

---

[10] Doc. no. 10 (Unopposed Motion for Extension of Time), at 2 (request for extension) and ¶ 5 (statement Re: "many complex issues").

[11] Doc. no. 12 ¶ 30 (emphasis and alteration supplied).

7

that plaintiff purported to represent also was substantially redefined as: "Every school system in the United States owning buildings whose fluorescent light ballasts contain the toxic chemical PCBs."[12]  Plaintiff's remedial theories remained the same, however:  that is, the amended complaint contained one count of negligence and another of wantonness.[13]

Defendant moved to dismiss the First Amended Complaint, arguing that the lack of privity between plaintiff and defendant barred plaintiff's negligence and wantonness claims, and, that plaintiffs were not within a "foreseeable area of risk."[14]  Plaintiff's response brief contended that privity of contract was not necessary to sustain a negligence claim against the manufacturer of an inherently hazardous product, and cited several cases that tracked the development of Alabama's hybridized variant of the theory of strict liability in tort:  the so-called "Alabama Extended Manufacturer's Liability Doctrine" (AEMLD).[15]

This court found that plaintiff had not alleged an AEMLD claim and, thus, that

---

[12] *Id*. ¶ 36.  Compare this definition to the one stated in the original complaint:  "Every school system in the United States covered by the EPA's December 29, 2010, recommendation to remove ballasts from every fluorescent light in schools built before 1979 because of the presence of toxic chemical PCBs."  Doc. no. 1 ¶ 34.

[13] *See* doc. no. 12 (First Amended Complaint) ¶¶ 38-44 (Negligence), 45-52 (Wantonness and Recklessness).

[14] Doc. no. 16 (Brief in Support of Defendant's Motion to Dismiss), at 2, 6-8.

[15] *See* doc. no. 17 (Plaintiff's Response Brief), at 12-13.

the cases based upon that doctrine that had been relied upon by plaintiff were not applicable.[16]  Even so, after examining *relevant* Alabama cases, this court concluded that the concepts of "privity of contract" and "foreseeability of the risk" did not bar recovery against defendant under common-law tort theories of negligence or wantonness.[17]  Thus, the court denied defendant's motion to dismiss.[18]

_____

[16] *See* doc. no. 23 (Memorandum Opinion), where this court wrote:

> More recent decisions of the Alabama Supreme Court have clearly stated that AEMLD is a stand-alone tort, *separate from* the common-law action for negligence, rather than a manner of proving negligence; and that the new tort stands in contrast to, *e.g.*, the doctrine of *res ipsa loquitur*. *See Spain v. Brown & Williamson Tobacco Co.*, 872 So. 2d 101, 105-06 (Ala. 2003); *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28, 35 (Ala. 2003). *See also McMahon v. Yamaha Motor Corp., U.S.A.*, — So. 3d —, No. 1100679, 2012 WL 677548, at *2 (Ala. Mar. 2, 2012) (citing *Tillman*, and noting that negligence and AEMLD "have different elements that must be proven").

> Plaintiffs often assert both AEMLD claims and traditional, common-law tort claims in the same actions. *See, e.g.*, *McMahon*, 2012 WL 677548, at *1; *Spain*, 872 So. 2d at 102; *Tillman*, 871 So. 2d at 29; *Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 3 (Ala. 2002). In the present case, however, the Tuscumbia City School System has not asserted an AEMLD claim. Instead, it only alleges common-law claims for the negligence and wantonness (or recklessness) of defendant's predecessor in interest. As the Alabama Supreme Court stated in *Spain* and *Tillman*, those common-law tort theories are separate from an AEMLD claim. Therefore, and despite plaintiff's reliance on AEMLD cases in its brief, this court must focus on the rules applicable to the common-law tort theories actually asserted in the complaint.

*Id*. at 13–14 (footnote omitted).

[17] This court wrote in the same memorandum opinion quoted in the preceding footnote that:

> The economic loss damages claimed by the Tuscumbia City School System are not a consequence of a "defect" in the product that renders it unusable. Rather, plaintiff alleges that the *inherently hazardous nature* of the products necessitates their removal from its school buildings. Plaintiff's claims, like those of the plaintiffs in the *Chinese Manufactured Drywall* cases and the Huntsville Board of Education

Nevertheless, plaintiff later requested leave to amend its complaint, to "add a products liability claim."[19]  The motion was granted,[20] and plaintiff filed its "Second Amended Nationwide Class Action Complaint."  That pleading retained the class definition utilized in the First Amended Complaint — "Every school system in the United States owning buildings whose fluorescent light ballasts contain the toxic chemical PCBs"[21] — as well as two counts alleging negligence and wantonness as remedial theories.  Significantly, the Second Amended Complaint added a "Count III," ambiguously entitled "Products Liability," and based it upon defendant's alleged "strict liability in tort."[22]

---

case referenced in Exhibit "A," are based in the contamination of buildings constructed with materials containing a hazardous substance.  Thus, they are not subject to the economic loss rule.  The hazardous nature of PCBs easily distinguishes the facts here from those in *Keck* and *Copenhagen Reinsurance*, which involved only ineffective home construction.  Moreover, in those cases, as in *Lloyd Wood*, *Wellcraft*, and *Bay Lines*, the defective products themselves, *i.e.*, the homes, sustained the damages.  Here, although plaintiff's damages can be categorized as "economic losses," the damages are not just to the products themselves.  The inspection, replacement, and remediation costs plaintiff seeks to recover stem from the hazardous nature of the products, not their inability to perform as advertised.  Therefore, no privity or foreseeability is required for plaintiff to recover against defendant.

*Id*. at 23–24 (footnotes omitted).

[18] *Id.* at 24.  This court also ruled that defendant's first motion to dismiss was moot as a result of the filing of plaintiff's first amended complaint.  *Id.*

[19] Doc. no. 28 (Motion for Leave to Amend Complaint).

[20] Defendant did not respond to the motion.  For that reason, this court concluded that defendant did not oppose the motion and granted it.  *See* doc. no. 30 (Order), at 1.

[21] Doc. no. 31 (Second Amended Complaint) ¶ 36 (alteration supplied).

[22] *See id.* ¶ 53-58, 59 ("[P]laintiff and the class seek a trial on defendant's strict liability in

10

Defendant moved to dismiss the claim alleged in Count III of the Second Amended Complaint or, in the alternative, for a more definite statement, arguing that the remedial theory of "strict liability in tort" is not cognizable under Alabama law.[23] This court denied the motion to dismiss, but granted the alternative aspect of that motion, and ordered plaintiff to file a more definite statement of Count III.[24]

Plaintiff did not craft a more definite statement of Count III, however, but instead filed a "Third Amended Nationwide Class Action Complaint." That pleading amended the basic class definition, and added a new "sub-class of plaintiffs" for Count III: that is, paragraph 36 stated that plaintiff sought to represent a basic class composed of "[e]very school system in the United States owning buildings constructed before 1979,"[25] as well as a sub-class composed of:

> Every school system in any state in the United States whose law recognizes a claim for product liability for hazardous products, **the prima facie elements of which are the same as those stated in Section 402A(1) of the Restatement of Torts (Second)**, owning buildings

---

tort.") (alteration supplied).

[23] *See* doc. no. 32 (Motion to Dismiss) ¶¶ 3-4.

[24] *See* doc. no. 35 (Memorandum Opinion), at 6-7.

[25] Doc. no. 36 (Third Amended Complaint) ¶ 36 (alteration supplied). *Compare* doc. no. 1 (Original Complaint) ¶ 34 ("Every school system in the United States covered by the EPA's December 29, 2010, recommendation to remove the ballasts from every fluorescent light in schools built before 1979 because of the presence of the toxic chemical PCBs.") *with* doc. no. 12 (First Amended Complaint) ¶ 36 ("Every school system in the United States owning buildings whose fluorescent light ballasts contain the toxic chemical PCBs."), *and* doc. no. 35 (Second Amended Complaint) ¶ 36 (same) *with* doc. no. 36 (Third Amended Complaint) ¶ 36 ("Every school system in the United States owning buildings constructed before 1979.").

constructed before 1979 (the "Products Liability Sub-Class").  Plaintiff is a typical member of the Products Liability Sub-Class, and will be an adequate representative of the Products Liability Sub-Class, **because its claims for products liability arise under and are governed by the Alabama Extended Manufacturers Liability Doctrine** (AEMLD"), the prima facie elements of which are the same as those set forth in Section 402A(1) of the Restatement.  *Atkins v. American Honda Motors Corp.*, 335 So. 2d 134, 137 (Ala. 1976).

Doc. no. 36 (Third Amended Complaint) ¶ 54 (boldface emphasis supplied).

Defendant moved to dismiss Count III, the amended basic-class-definition, and the new sub-class of plaintiff's Third Amended Complaint.[26]  That motion apparently caused plaintiff's counsel to realize, belatedly, that they had failed to obtain either consent of the defendant or leave of the court to file an amended complaint, as opposed to a more definite statement of Count III,[27] because they then filed a "motion

---

[26] Doc. no. 37.

[27] *See* doc. no. 35 (Memorandum Opinion and Order denying defendant's motion to dismiss Count III of plaintiff's Second Amended Complaint, but ordering plaintiff "to file an amended complaint that more definitely states Count III on or before December 5, 2012"), saying:

Ordering plaintiff to more definitely state Count III is the proper course here. That conclusion is especially warranted when, as here, the case is a putative class action.  As defendant observes, disambiguating the theory behind Count III "will make clearer discovery, clearer responsive pleadings, and clearer framing of the issues if Plaintiff seeks class certification."  *See Fikes*, 89 F.3d at 1083 n.6 (noting the court's authority to order a more definite statement to further the orderly, efficient, and economic disposition of a case).  Clarity of the record will also be furthered, because the basis of Count III will be *in plaintiff's complaint*, rather than in representations within a brief submitted in response to a motion to dismiss.

Second, and related to the clarity rationale, a more definite statement is proper in order to resolve the inconsistency between, on one hand, the pleading of a claim under Alabama's Extended Manufacturer's Liability Doctrine and, on the other hand,

in the alternative to allow the third amended complaint as filed."[28]  That motion was

denied.  Instead, this court found that plaintiff's Third Amended Complaint exceeded

the scope of the order directing a more definite statement of Count III and, therefore,

violated Federal Rule of Civil Procedure 15.[29]

> Simply put, an order granting an adverse party's motion for a
> more definite statement of a specific count does not give the pleading
> party *carte blanche* to amend other portions of its complaint without
> first seeking and receiving leave.  The court will not ratify such action,
> especially when the offending party does not explain its initial failure to
> comply with Rule 15(a)(2), fails to subsequently provide a legitimate
> reason for granting relief under that Rule, and had had prior opportunities to
> amend its complaint.  *See McKinley v. Kaplan*, 177 F.3d at 1258; *see
> also Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)
> (observing that leave to amend may be denied for a "substantial
> reason").

Doc. no. 49 (Memorandum Opinion and Order), at 15.

This court also found that plaintiff had "once again failed to properly plead

Count III by conflating an AEMLD claim with a claim for strict liability."  *Id.* at 22.

Indeed, plaintiff attempted to represent a sub-class composed of Alabama AEMLD

---

the characterization of that claim as one for "strict liability in tort."  In sum,
defendant has met its burden of "point[ing] out the defects complained of and the
details desired."  *U.S. Army Corps of Engineers*, 2006 WL 6080869, at *1; *see* Fed.
R. Civ. P. 12(e).  The motion for a more definite statement is due to be granted.

*Id.* at 6-7 (footnote omitted) (emphasis and alteration in original).

[28] Doc. no. 40.

[29] Doc. no. 49 (Memorandum Opinion), at 15.  Plaintiff's ability to amend its pleading as of
right had expired, and plaintiff neither sought leave to amend its class definition, nor explained its
failure to do so.

claimants and non-Alabama strict liability claimants, thereby commingling the two legal theories.[30]   Accordingly, and as a sanction for plaintiff counsel's "willful misconduct, . . . abusive pleading practices, refusal to abide by the rulings and orders of the court, and . . . failure to comply with the Federal Rules of Civil Procedure," the court struck the second and third amended complaints, leaving the first amended complaint as "the operative pleading."  *Id.* at 24.

Defendant subsequently filed a motion to strike the testimony of one of plaintiff's experts, Dr. Lois D. George.   Defendant argued that Dr. George's testimony, which plaintiff offered as *rebuttal testimony* under Federal Rule of Civil Procedure 26, was actually "a new and independent report" of *an initial expert*.[31] This court agreed, and in an order entered on September 3, 2014, found that "[w]ith one minor exception, . . . no claim in [the subject report] rebuts, directly or indirectly, any claim made by any of defendant's experts."[32]  Further, because the plaintiff made no effort whatsoever to show that its failure to timely disclose Dr. George as an initial expert under Rule 26 was substantially justified or harmless, the court struck all aspects of her expert report, except for the opinion that "[a] ballast leak or fire could

---

[30] *Id.* at 16–17.

[31] Doc. no. 51 (Motion to Strike), at 1.

[32] Doc. no. 60 (Order on Defendant's Motion to Strike Expert Report of Dr. Lois D. George).

happen at any time, and without warning add PCB levels in the air."[33]

Following the completion of discovery, defendant filed a *Daubert* motion to exclude the testimony of plaintiff's expert witnesses under Federal Rule of Evidence 702.[34]   This court subsequently excluded the testimony of all of plaintiff's experts, with the sole exception of one opinion statement by Dr. Lois D. George to the effect that "fluorescent light ballasts can fail at any time and release PCBs into the environment through fire or leakage."[35]

Plaintiff filed a motion for class certification on March 19, 2015, and proposed yet another definition of the putative class:  *i.e.*, "all school systems *in the state of Alabama* that own buildings built before 1979, who were recommended by the United States Environmental Protection Agency to remove the ballasts from every

---

[33] Doc. no. 59-1 (George Report), Part 4.1 (4th ¶), at ECF 7 (alteration supplied).

[34] *See* doc. no. 62 (Motion to Exclude).   *See also*, *e.g.*, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[35] Doc. no. 71 (12 Feb. 2015 Memorandum Opinion on Defendant's Motion to Exclude Plaintiff's Expert Witnesses), at 18 & n.45 (quoting doc. no. 69 (Plaintiff's Response to Defendant's Motion to Exclude), at ECF 2).   The statement quoted in the text accompanying this footnote was taken from plaintiff's response (doc. no. 69), and is a paraphrase of the actual statement from Dr. Lois D. George's written report that this court did not strike. *See* doc. no. 60 (Sept. 3, 2014 Order on Defendant's Motion to Strike Expert Report of Dr. Lois D. George), at 5 ("The George Report includes one claim that rebuts a claim made in defendant's expert reports, and it will not be stricken. Mrs. George claims that ballast leaks or fires 'could happen at any time,' which rebuts Dr. Loud's claim that such events are 'extremely rare.'") (quoting doc. no. 59-1 (George Report), at 4; and, doc. no. 58 (Exhibit 9 (Expert Report of John Loud)), at 4).   *See also* doc. no. 59-1 (George Report), Part 4.1 (4th ¶), at ECF 7 ("A ballast leak or fire could happen at any time, and without warning add PCB levels in the air.").

fluorescent light in their school."[36]  Plaintiff alleged that

> it seeks to certify a statewide class of similarly situated public schools. This class seeks to bring two claims against Defendant Pharmacia Corporation ("Pharmacia").  First, the prospective class brings a claim that Pharmacia, under its former name of Monsanto, negligently marketed and sold a product it should have known was defective and dangerous.  Secondly, the class also brings claims under the Alabama Extended Manufacturer's Liability Doctrine . . . .

Doc. no. 74 (Motion for Class Certification), at 1.  Defendant filed a motion to strike plaintiff's motion for class certification and the class allegations of the first amended complaint on March 23, 2015.[37]  The court heard oral argument on that motion, as well as defendant's motion for summary judgment, on August 25, 2015.[38]

## II.  DISCUSSION

Plaintiff's First Amended Complaint asserts one count of negligence and one count of wantonness (or recklessness) based upon the proposition that "[t]he release of PCBs into the environment of [plaintiff's schools] is a form of manifest, present property damage.'"[39]  Defendant contends in the brief accompanying its motion for summary judgment that plaintiff has failed to establish any such property damage.

---

[36] Doc. no. 74 (Motion for Class Certification), at 1 (emphasis supplied).

[37] Doc. no. 77 (Motion to Strike).

[38] *See* doc. nos. 89 and 93.

[39] Doc. no. 12 (First Amended Complaint) ¶ 30 (alterations supplied).  As noted previously, the opinion entered on June 20, 2013, made plaintiff's First Amended Complaint the "operative pleading."  Doc. no. 49 (Memorandum Opinion and Order), at 24.

"Alabama has long required a *manifest*, *present* injury before a plaintiff can recover in tort." *Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 715 (Ala. 2002) (emphasis supplied).  Plaintiff's First Amended Complaint alleges that it "suffered manifest, present injuries *through the release of PCBs into the environment of* [its] *schools* within two years prior to the filing of the original complaint in this case.  Each such release constitutes a manifest, present injury to [the plaintiff] school system."[40]  However, plaintiff has provided no evidence showing that PCBs have been released into the environment of its schools.  Plaintiff's expert, Lois D. George, testified that "A ballast leak or fire could happen at any time, and without warning add PCB levels in the air."[41]  That testimony merely speculates as to what is possible, and does not state that PCBs actually were released into the atmosphere of plaintiff's schools.

Plaintiff next points to the testimony of Steve Carter, the Maintenance Supervisor of the Tuscumbia School System, who testified: "Since January 31, 2010, I have seen and dealt with multiple failed fluorescent light ballasts that had *material* leaking out of them.  Some of the ballasts appeared to have been burned, and a few

---

[40] Doc. no. 12 (First Amended Complaint) ¶ 33 (alterations and emphasis supplied).

[41] Doc. no. 59-1 (George Report), Part 4.1 (4th ¶), at ECF 7; *see also* doc. no. 85-12 (George Report), Part 4.1 (4th ¶), at ECF 6 (same).

17

were still smoking when removed."[42]  Again, that testimony does not show that *PCBs* were actually released into the atmosphere of plaintiff's schools: according to the EPA, PCBs are not found in all ballasts.[43]  Carter's testimony merely states that some fluorescent light ballasts, which may or may not have contained PCBs, leaked "material."  It is pure speculation whether that "material" contained PCBs.

Finally, plaintiff points to the testimony of its employee, Jim Grinnell, who stated that he had witnessed "some little flames right on the end of" a ballast in one of plaintiff's schools.[44]  That testimony also is not probative of the release of PCBs, because it merely shows that *one ballast* in *one* of plaintiff's schools once emitted "some little flames," which may or may not have contained PCBs.  That evidentiary reed is far too weak to be so much weight.

In short, no reasonable jury could conclude from the scintilla of evidence produced by plaintiff that PCBs actually had been released into the environment of its various school buildings.[45]  Even so, plaintiff contends that "the dangerous condition [of the presence of PCBs in fluorescent light ballasts in its schools] itself

---

[42] Doc. no. 85-1 (Carter Declaration) ¶ 3 (emphasis supplied).

[43] Doc. no. 7-1 ("Removing PCBs from Light Fixtures: Protecting Students from Hidden Dangers"), at ECF 3-4 ("PCBs are found only in magnetic ballasts.  If your ballasts are electronic, they are PCB-free."); *see id.* at 4 (stating that, if a "complete lighting retrofit [has] been performed since 1979," the "ballasts probably do not contain PCBs").

[44] Doc. no. 85-2 (Grinnell Declaration) ¶ 3.

[45] Doc. no. 12 (First Amended Complaint) ¶ 33 (alteration supplied).

constitutes property damage for the Plaintiff, *as the Court previously recognized*."[46]

Plaintiff mischaracterizes this court's June 27, 2012 opinion. In denying defendant's

motion to dismiss, this court stated:

> The facts outlined in the complaint demonstrate the dangers that
> PCBs pose to humans, and the risk of exposure from ballasts that leak,
> fail, or overheat in fluorescent light. The *actual harm* for which the
> Tuscumbia City School System seeks damages in this case, however, is
> not compensation for personal injuries already sustained by any
> particular person, but instead, damage to property *other than* the
> fluorescent light ballasts manufactured by defendant's predecessor in
> interest. Specifically, and based upon the proposition that "[t]he release
> of PCBs into the environment of [plaintiff's schools] is a form of
> manifest, present *property* damage," the Tuscumbia City School System
> asks that defendant be compelled to pay: the costs of inspecting its
> school buildings to determine which fluorescent light fixtures have
> ballasts containing PCBs, *and*, whether other property in each school
> building has been contaminated by PCBs that were emitted by ballasts
> that leaked, failed, or overheated; the costs of removing, replacing, and
> disposing of the affected ballasts; and, "any and all costs reasonably
> incurred to remediate the PCB-containing ballasts and all resulting
> harm" to the plaintiff's property.

Doc. no. 23 (Memorandum Opinion), at 14-15 (emphasis and alterations in original,

footnotes omitted). This court explicitly recognized that plaintiff's allegations of

property damage were based upon the *release of PCBs* into plaintiff's schools, and

not merely *the presence of* PCBs in fluorescent light ballasts. Plaintiff cannot simply

disregard its first amended complaint, as well as an opinion of this court, and recast

---

[46] Doc. no. 83 (Plaintiff's Response to Summary Judgment Motion), at 7 (alterations and emphasis supplied).

its allegations of property damage at the summary judgment stage.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974–75 (11th Cir. 2004) (affirming the district court's finding that a plaintiff cannot assert additional *claims* not identified in the complaint); *see also San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1200–04 (N.D. Ala. 2012) (Smith, J.) (finding that the reasoning in *Davis* barred plaintiffs from asserting a new legal *theory* at the summary judgment stage).

More importantly, however, plaintiff's response to defendant's motion to exclude the testimony of plaintiff's expert witnesses acknowledged that, "[i]n order to show damages and get . . . relief, Plaintiff must simply show that PCBs have been in the schools *outside the ballasts* within the past two years."[47]  Plaintiff's "new" theory of property damage — *i.e.*, the mere presence of PCBs *inside the ballasts* — seems to have surfaced only after this court excluded most of plaintiff's expert testimony purporting to show that PCBs had leaked from the ballasts.[48]

Plaintiff argues in response to defendant's motion for summary judgment that the "bottom line is that the right thing to do is to get these toxic chemicals out of

---

[47] Doc. no. 69 (Plaintiff's Response to Motion to Exclude), at ECF 8 (alteration, ellipsis, and emphasis supplied).

[48] *See* doc. no. 71 (Memorandum Opinion and Order).

Plaintiff's schools and out of all schools in Alabama."[49]  That well may be so, but it does not change the fact that plaintiff has failed to create a genuine issue of material fact as to whether plaintiff suffered the injury alleged in its first amended complaint. Accordingly, summary judgment is due to be entered in favor of defendant on plaintiff's claims for negligence and wantonness.

Because summary judgment is being granted on the claims asserted by the putative class representative, there is no need to consider any issues related to class certification.  In *Rink v. Cheminova*, 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit upheld the district court's decision to exclude the putative class representatives' expert witnesses, as well as the resulting decision to grant summary judgment on the putative class representatives' individual claims, due to lack of proof of causation.  *Id.* at 1288.  The district court also had denied the putative class representatives' motion for class certification, but the Eleventh Circuit declined to reach that issue on appeal, stating:  " Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."  *Id.* at 1297 (citing *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims as a class action is moot.")).  *See also Boca Raton*

---

[49] Doc. no. 83 (Plaintiff's Response to Summary Judgment Motion), at 8.

*Community Hospital, Inc. v. Tenet Health Care Corporation*, 582 F.3d 1227, 1234 n.4 (11th Cir. 2009) ("Because summary judgment was appropriate, Boca's challenge to the district court's denial of class certification is moot.") (citing *Rink*, 400 F.3d at 1297). For the same reasons, in this case, plaintiff's motion for class certification and defendant's motion to strike plaintiff's motion for class certification and to strike the class allegations of plaintiff's first amended complaint will be found moot.

### III. CONCLUSIONS AND ORDERS

For the foregoing reasons, defendant's motion for summary judgment (doc. no. 72) is GRANTED, and all claims asserted herein by the Tuscumbia City School System on its own behalf, individually, are DISMISSED with prejudice. Plaintiff's motion for class certification (doc. no. 74) and defendant's motion to strike plaintiff's motion for class certification and to strike the class allegations of plaintiff's first amended complaint (doc. no. 77) are DENIED as MOOT. Costs are taxed to plaintiff. The Clerk is directed to close this file.

**DONE** and **ORDERED** this 1st day of September, 2015.

_____
United States District Judge

22